UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRANK DELUCA and MARY DELUCA, Individually
and as Class Representative Plaintiffs; MORGAN
GREENE, Individually and as Class Representative
Plaintiff; COLLEEN BRIGANTE, Individually and
as Class Representative Plaintiff,

                                     Plaintiffs,

        v.                                                          **DECISION AND ORDER**
                                                                    10-CV-859S

TONAWANDA COKE CORPORATION; JAMES
DONALD CRANE; MARK KAMHOLZ; ABC
CORPORATIONS 1 through 20 (Fictitious Defendants);
DEF CORPORATIONS 1 through 20 (Fictitious
Defendants); JOHN DOES 1 through 20 (Fictitious
Defendants),

                                     Defendants.

## I. INTRODUCTION

        Plaintiffs are representative members of a putative class consisting of residents of

Tonawanda, New York. (Notice of Removal (Docket No. 1), Ex. A (Class Action Complaint

("Compl.") ¶¶ 1-4).)    The named Defendants are Tonawanda Coke Corporation

("Tonawanda Coke"), James Donald Crane, and Mark Kamholz. (Compl. ¶¶ 5-7).) This

case originally was filed in the New York State Supreme Court, County of Erie, but was

removed by Defendants to this Court. (Notice of Removal at 1.)

        Pending before this Court is Plaintiffs' Motion to Remand this action back to the

state court, along with a request for attorneys' fees.[1] (Docket No. 9.) Also pending is

---

[1]In support of their motion, Plaintiffs have filed the following: the affidavit of Charles H. Cobb, Esq.
(Docket No. 9) ("Cobb Aff."); a copy of the Complaint and supporting exhibits thereof (Docket No. 9, Ex. A
and attachments thereto); a copy of Defendants' Notice of Removal and a proposed order remanding the
case to the New York state court (Docket No. 9, Ex. B); a memorandum of law (Docket No. 9) ("Pls.'

Defendant Tonawanda Coke's motion to dismiss several counts of the Complaint and to strike several allegations within the Complaint (Docket No. 4)[2], and a motion by Defendants Crane and Kamholz to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[3]  (Docket No. 3.)

For the reasons that follow, this Court finds that it lacks subject matter jurisdiction over this case.  Accordingly, this Court will grant Plaintiffs' motion to remand.  This Court declines to award attorneys' fees to Plaintiffs.

Because this Court finds it lacks subject matter jurisdiction, it is not permitted to address the merits of Defendants' motions.  Accordingly, those motions are denied without prejudice.

## II. BACKGROUND

### A. Factual Background

In deciding either a motion to remand or a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must assume as true all factual allegations set forth in the complaint.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002); Rosenberg v. GWV Travel, Inc., 480 F.Supp. 95, 96 (S.D.N.Y. 1979).

Mem.); and a reply memorandum (Docket No. 21).  Defendants have filed a memorandum in opposition to Plaintiffs' motion (Docket No. 18 ("Defs.' Mem.")).

[2]In support of its motion, Defendant Tonawanda Coke has submitted a memorandum of law (Docket No. 4); the declaration of Rick Kennedy (Docket No. 5. ("Kennedy Decl.")), with an attached copy of the Complaint and an exhibit thereto (Docket No. 5, Ex. A); and a reply memorandum (Docket No. 19). Plaintiffs have filed a memorandum in opposition to Tonawanda Coke's motion (Docket No. 11) and an affidavit in opposition to the motion (Docket No. 13).

[3]In support of their motion, Defendants Crane and Kamholz have submitted a memorandum of law (Docket No. 3); the declaration of Rick Kennedy (Docket No. 5. ("Kennedy Decl.")), with an attached copy of the Complaint and an exhibit thereto (Docket No. 5, Ex. A); and a reply memorandum (Docket No. 20).  Plaintiffs have filed a memorandum in opposition to Crane and Kamholz's motion (Docket No. 15) and an affidavit in opposition to the motion (Docket No. 13).

Plaintiffs are residents of Tonawanda, New York.  (Compl. ¶¶ 1-3.)  Defendant Tonawanda Coke manufactures foundry coke and other products in Tonawanda.  (Compl. ¶ 5.)  Defendant Crane is the owner and CEO of Tonawanda Coke.  (Compl. ¶ 6.) Defendant Kamholz is or was the Environmental Control Manager for Tonawanda Coke. (Compl. ¶ 7.)

The Tonawanda Coke facility has been in operation since 1917.  (Compl. ¶ 12.)  The site has been owned by Defendant Crane since 1978.   (Compl. ¶ 16.)   The facility continues to operate as a merchant producer of foundry coke twenty-four hours per day, seven days per week.  (Compl. ¶ 17.)

In 2007, the New York State Department of Environmental Conservation ("NYSDEC") conducted a year-long air quality study in Tonawanda.  (Compl. ¶ 34.)  The NYSDEC study involved installing air quality monitors at various locations throughout the community to measure concentrations of various toxic pollutants.  (Compl. ¶¶ 35-38.)   A report was issued by NYSDEC in October 2009.  (Compl. ¶ 40.)  The study found that the concentrations of benzene and formaldehyde were higher in the study area than in other areas of New York State.  (Compl. ¶ 40.)   In particular, the benzene concentrations in the Town of Tonawanda were found to be up to 75 times higher than the levels recommended by state guidelines.  (Compl. ¶ 45.)  Tonawanda Coke was the largest known point source of benzene in the study area.  (Compl. ¶ 42.)

In June and September 2009, the United States Environmental Protection Agency ("EPA") conducted two compliance inspections of Tonawanda Coke's facility under the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901 *et seq.* ("RCRA"). (Compl. ¶ 21.)  The inspections revealed Tonawanda Coke had recycled decanter tank tar

sludge by using it as feedstock to produce its foundry coke.  (Compl. ¶ 22.)  Additionally, the EPA found tar storage tank residue in and around the remains of two abandoned tar storage tanks that had burned during a failed decommissioning attempt in 2007.  (Compl. ¶ 23.)  Analysis of the tar storage tank residue indicated the presence of hazardous waste in and around the burnt tanks.  (Compl. ¶ 24.)

Following the inspections, the EPA issued an Information Request Letter to Tonawanda Coke under RCRA.  (Compl. ¶ 28.)  The EPA determined that Tonawanda Coke's practices had generated "solid waste" and "hazardous waste" and had created a situation under which hazardous waste and other materials had entered the environment and might continue to do so.  (Compl. ¶¶ 31-32.)

On October 30, 2009, the EPA issued a letter to Tonawanda Coke, stating that the data collected in the EPA's inspection and in the NYSDEC study indicated that Tonawanda Coke's benzene emissions were causing or contributing to elevated benzene concentrations in the local environment.  (Compl. ¶ 46.)

On December 7, 2009, the EPA issued a Notice of Violation to Tonawanda Coke for violations of the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*  (Compl. ¶ 47.)  On December 17, 2009, the EPA issued a Water Administrative Order to Tonawanda Coke citing numerous violations. (Compl. ¶ 48.) Also in December 2009, the EPA issued a Complaint, Compliance Order and Opportunity for a Hearing to Tonawanda Coke, alleging violations of the Solid Waste Disposal Act[4] in relation to its treatment of hazardous waste.  (Compl. ¶ 49.)

---

[4]The Solid Waste Disposal Act is a provision within RCRA.  See Chicago v. Envtl. Defense Fund, 511 U.S. 328, 330, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994).

4

In December 2009, federal investigators, acting under the direction of the United States Attorney for the Western District of New York, raided Tonawanda Coke's facility and later arrested Defendant Kamholz. (Compl. ¶¶ 50-51.)  Defendant Kamholz was charged with numerous counts, including violations of the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA"), RCRA, and the Clean Air Act.[5]  (Compl. ¶ 51.)  In April 2010, the EPA issued another Notice of Violation to Tonawanda Coke for additional violations of the Clean Air Act.  (Compl. ¶ 52.)

### B.  Procedural Background

This case originally was filed on September 27, 2010, in the New York State Supreme Court in Erie County.  (Notice of Removal at 1-2.)  The Complaint is styled as a "Class Action Complaint," and Plaintiffs purport to be representatives of a class of approximately 38,875 people who reside in the NYSDEC study area and have been damaged by Defendants' conduct.  (Compl. ¶ 63.)  The named Plaintiffs – Frank and Mary DeLuca, Morgan Greene, and Colleen Brigante – each claim to be representatives of a subclass within the larger class.  (See Compl. ¶¶ 60-61.)  Specifically, Frank and Mary DeLuca hold themselves out as representatives of a class whose property values have suffered (Compl. ¶ 73); Morgan Greene holds herself out as the representative of a class that has suffered loss of quality of life (Compl. ¶ 77); and Colleen Brigante holds herself out as the representative of a class that has the potential to develop medical problems. (Compl. ¶ 80.)

---

[5]On July 29, 2010, the grand jury returned an indictment against Defendants Tonawanda Coke and Kamholz.  That case is currently pending in this Court.  (United States v. Tonawanda Coke and Kamholz, Case No. 1:10-cr-00219.)  The indictment alleges violations of the Clean Air Act and RCRA, along with obstruction of justice.  (Indictment (Docket No. 10) at pp. 9-27.)

The Complaint states ten causes of action: (1) negligence; (2) gross negligence; (3) negligence *per se*; (4) strict liability; (5) absolute liability; (6) trespass; (7) nuisance; (8) unjust enrichment; (9) battery; and (10) "punitive damages." (Compl. ¶¶ 83-130.) Plaintiffs seek "compensatory, exemplary, and punitive damages" from Defendants. (Compl. at pp. 26-28.)

On October 29, 2010, the named Defendants[6] removed the case to this Court on the basis that claims in the Complaint arise under federal law. (Notice of Removal at 2.) Subsequently, Defendants filed motions to dismiss some or all of the claims against them. (Docket Nos. 3, 4.)

Plaintiffs filed the pending motion to remand the case back to New York state court, contending that this Court lacks subject matter jurisdiction and that the proper forum is state court. (Docket No. 9.) Defendants respond that this Court possesses either original or supplemental subject matter jurisdiction over the entire cause of action.

## IV. DISCUSSION

### A. Plaintiffs' Motion to Remand

This Court first will address Plaintiffs' motion to remand, as it concerns the threshold question of whether this Court possesses subject matter jurisdiction over this case. <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

---

[6]The Complaint also lists three subgroups of unknown or "fictitious" corporate and individual defendants. (Compl. ¶¶ 8-10.)

### 1.  Legal Standards

District courts have original jurisdiction over all civil actions arising under the Constitution, treaties, or laws of the United States.  28 U.S.C. § 1331.  A civil action brought in state court may be removed by a defendant to a federal district court of original jurisdiction.  28 U.S.C. § 1441.

Out of respect for states' rights and in keeping with the limited jurisdiction of federal courts, removal jurisdiction is "strictly construed," with all doubts resolved against removal. Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002); In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig., 488 F.3d 112, 124 (2d Cir. 2007).  The removing party bears the burden of establishing proper jurisdiction. United Food & Commercial Workers Union v. Centermark  Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994); Funeral Fin. Sys., Ltd. v. Solex Express, Inc., No. 01-CV-6079(JG), 2002 WL 598530, at *3 (E.D.N.Y. Apr. 11, 2002) (noting that in the face of a motion to remand, the burden falls on the defendant to prove the existence of jurisdiction and that the case is properly in federal court).

### 2.  "Arising Under" Jurisdiction

Plaintiffs contend that Defendants have failed to meet their burden of establishing removal jurisdiction because the face of the Complaint does not state any cause "arising under" federal law.  (Pls.' Mem. at 8.)

In general, a claim arises under federal law if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax

7

Bd. of California v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), superseded by statute on other grounds, 28 U.S.C. § 1441(e); Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 690, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (reiterating Franchise Tax standard).  Importantly, it is the plaintiff's complaint that determines whether the case arises under federal law:  "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); Franchise Tax, 463 U.S. at 10; Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914).  "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Gully v. First Nat'l Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936).  This preserves the plaintiff's role as "master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998).

On the face of the Complaint in this case, the causes of action set forth – negligence, gross negligence, negligence *per se*, strict liability, absolute liability, trespass, nuisance, unjust enrichment, battery, and "punitive damages" – sound in state, not federal, law.  The Complaint does not explicitly state any federal causes of action. (Compl. ¶¶ 83-130.)  See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (noting that the "vast majority" of cases brought under federal-question jurisdiction are those in which federal law creates the cause of action).

Defendants argue, however, that "arising under" federal jurisdiction exists in this case because there are substantial issues of federal law embedded within Plaintiffs' state-

law causes of action.   For example, Defendants point out that the Complaint refers to determinations by the EPA that Defendants were in violation of several federal statutes, including RCRA, the Clean Air Act, and the Clean Water Act.   (Defs.' Resp. at 2-3.) Defendants also note that the EPA and the U.S. Attorney have instituted federal administrative and criminal proceedings based on the same conduct underlying Plaintiffs' claims.   (Id. at 2.)   Defendants assert that Plaintiffs' claims are "fundamentally premised" on alleged federal violations, and therefore arise under federal law.   (Id. at 3.)

Defendants rely on Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), in support of the application of "arising under" jurisdiction here.   In Grable, the plaintiff (Grable) brought suit in state court to quiet title to a property that the IRS had seized from Grable and subsequently sold to the defendant, Darue.   545 U.S. at 310-11.   In the state action, Grable argued that Darue did not have title to the property because the IRS, in seizing the property from Grable, had failed to give proper notice to Grable in the manner required by federal statute.   Id. at 311.   The IRS had given notice by certified mail instead of in person.   Id. at 310.   Darue removed the case to federal court on the basis of "arising under" jurisdiction, because resolution of the state cause of action required a determination of whether the federal statute governing IRS seizure notice permitted notice by certified mail.   Id.

The Supreme Court of the United States stated that the relevant question in determining the propriety of exercising jurisdiction is:

 [D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

9

Id. at 314.

The Court determined that federal jurisdiction was warranted in that case.  Id.  at 314.  First, the issue of whether Grable had been given notice within the meaning of the federal statute was an "essential element" of its quiet title claim, and the meaning of the federal requirement actually was in dispute.  Id. at 315.  Second, the federal government and other affected parties had a direct interest in the availability of a federal forum to provide expertise in determining what constituted proper IRS notice under federal tax law.  Id.  Third, because quiet title cases only rarely included a disputed question of federal law, allowing federal jurisdiction would have only a "microscopic effect" on the federal-state division of labor in such cases.[7]  Id.

Contrary to Defendants' contention, the Complaint in this case is distinct from that in Grable, and it fails the test for establishing "arising under" jurisdiction set forth in Grable.  Grable's quiet title action necessarily turned on the contention that the IRS had failed to comply with federal notice provisions.  Id. at 315.  By contrast, all but one of the causes of action in this case turn entirely on questions of state law, including traditional tort law questions of duty, breach, causation, and damages.  (Compl. ¶¶ 83-130.)

The sole reliance by Plaintiffs on an alleged violation of federal law is in the cause of action entitled "negligence *per se*."  (Compl. ¶¶ 95-98.)  Plaintiffs allege that Defendants' conduct violated "State and Federal law" and therefore constituted negligence *per se*.  (Compl. ¶ 97.)  This does not create a "necessary" federal-law question, however.  Plaintiffs' negligence *per se* count relies on alternative grounds for finding the presumption

---

[7]The Grable Court also noted that there was a long history of exercising federal jurisdiction in quiet title cases where it was necessary to apply federal law to determine title.  Id. at 315-16.

of negligence – *i.e.*, violations of either state or federal law.  Thus, a fact finder could find negligence *per se* without determining whether Defendants violated federal law. See <u>Wedlock v. Troncoso</u>, 185 Misc.2d 432, 436, 712 N.Y.S.2d 328 (N.Y. Sup. 2000) (noting that a violation of a state *or* federal statute constitutes negligence *per se* under New York law).  It is clear that where there are alternative, non-federal bases for liability on a state cause of action, there is no "necessary" federal-law question permitting the exercise of federal jurisdiction.  <u>See</u> <u>Broder v. Cablevision Sys. Corp.</u>, 418 F.3d 187, 194 (2d Cir. 2005) ("Where a federal issue is present as only one of multiple theories that could support a particular claim . . . this is insufficient to create federal jurisdiction."); <u>Mulcahey v. Columbia Organic Chem. Co.</u>, 29 F.3d 148, 154 (4th Cir. 1994) (no jurisdiction where "negligence *per se* under the federal environmental statutes is only one of the Plaintiffs' numerous theories of recovery"); <u>*In re* Reserve Fund Sec. and Derivative Litig.</u>, 2009 WL 3634085, *4 (S.D.N.Y. Nov. 3, 2009) (no jurisdiction where federal law violation was only one of several alternate theories on which plaintiff sought to recover for breach of contract and fiduciary duties; "Courts in this Circuit have made clear that the exercise of federal jurisdiction is inappropriate where 'no cause of action . . . necessarily stands or falls based on a particular interpretation or application of federal law.'") (quoting <u>Sung v. Wasserstein, et al.</u>, 415 F.Supp.2d 393, 406 (S.D.N.Y. 2006)); <u>Caggiano v. Pfizer</u>, 384 F.Supp.2d 689, 691 (S.D.N.Y. 2005) (jurisdiction was not proper because "violation of federal law is simply one of multiple theories on which plaintiff may possibly prevail"); cf. <u>Technical Rubber Co. v. Buckeye Egg Farm, L.P.</u>, 2000 WL 782131, *3 (S.D. Ohio June 16, 2000) (no jurisdiction; although complaint alleged the defendant violated "state and/or federal law"

in causing ground, air and water pollution, the claims sounded in nuisance, and the plaintiffs specifically disclaimed any intent to assert federal causes of action).

Defendants argue that Plaintiffs have done more than simply assert a single claim of negligence *per se* based partially on alleged violations of federal law.  Rather, Plaintiffs have alleged "extensive federal involvement, federal criminal involvement, and significant parallel federal administrative activity."   (Defs.' Resp. at 7.)

These allegations do not create a federal law question necessary to the determination of whether Defendants committed common-law torts against Plaintiffs.  As noted, none of the causes of action asserted by Plaintiffs necessarily depends on a determination that Defendants violated federal law.  The references to federal law violations and proceedings are merely contextual allegations and cannot transform this state case into one appropriate for federal jurisdiction.  See Segal v. Varonis Sys., Inc., 601 F.Supp.2d 551, 554-55 (S.D.N.Y. 2009) (no jurisdiction where plaintiff's wrongful discharge, tort, and breach of contract complaint contained allegations that the defendant had failed to pay wages and benefits as required under U.S. Department of Labor rulings; these were "contextual allegations" that did not themselves assert federal causes of action); Caggiano, 384 F.Supp.2d at 690 (although the complaint was "peppered" with allegations that the defendants violated federal law, such "contextual allegations" were not enough to confer federal question jurisdiction, where there was no federal law question essential to resolution of the state claims).

Nor does the existence of concurrent federal administrative and criminal proceedings against Defendants create a federal interest in Plaintiffs' wholly state-based claims, so as to warrant federal jurisdiction.  Although the issues in the parallel proceedings

12

might be similar, the Supreme Court has made clear that the question of federal question jurisdiction is determined from the face of the "well-pleaded complaint," and that the plaintiff is the master of the complaint, with the freedom to choose the forum.  Merrell Dow, 478 U.S. at 808 (citing Franchise Tax Bd., 463 U.S. at 9-10)); id. at 809 n.6 ("Jurisdiction  may not be sustained on a theory the plaintiff has not advanced."); Marcus, 138 F.3d at 52. The decision by federal authorities to bring parallel proceedings has no bearing on the plaintiff's ability to make this choice.[8]  See Caggiano, 384 F.Supp. at 690 (jurisdiction not proper even where the complaint referenced a finding by the Department of Health and Human Services that the defendants violated federal law, along with a federal *qui tam* suit brought against the defendants); cf. Caterpillar, 482 U.S. at 398-99 (noting that the plaintiff has the power to "choose to have the cause heard in state court," and that this power would be eviscerated by permitting the defendant to remove the case to federal court through the assertion of a federal defense).

Defendants also cite D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93 (2d Cir. 2001),  Nicodemus v. Union Pacific Corp., 440 F.3d 1227 (10th Cir. 2006), and Ormet Corp. v. Ohio Power Co., 98 F.3d 799 (4th Cir. 1996), in support of the exercise of federal jurisdiction here.  (Defs.' Resp. at 5-6.)  Each of these cases, however, presented questions of federal law necessary to the determination of the plaintiffs' claims.  See D'Alessio, 258 F.3d at 104 (jurisdiction was appropriate because "D'Alessio's claims

---

[8]Under the "artful pleading" doctrine, a corollary to the well-pleaded complaint doctrine, a plaintiff may not avoid federal jurisdiction over a cause of action by simply failing to state a necessary federal question in the complaint.  Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998).  Defendants, however, expressly disclaim any invocation of the "artful pleading" doctrine, instead asserting that the Complaint on its face avers federal claims.  (Defs.' Resp. at 5 n.6.) This assertion, as discussed, is unfounded.

necessarily require[d] a court to construe both the federal law governing securities trading on a national exchange *and* the [New York Stock Exchange's] role, as defined under federal law, in enforcing and monitoring a member's compliance with those laws[.]") (emphasis in original); <u>Nicodemus</u>, 440 F.3d at 1234-35 (jurisdiction proper where resolution of plaintiffs' claims against easement holder required interpretation of the easement under federal land-grant statutes); <u>Ormet</u>, 98 F.3d at 807 (jurisdiction proper where "resolution of the dispute require[d] the interpretation and application of the [federal Clean Air Act] to the contractual arrangement between the parties."). Defendants' reliance on these decisions is misplaced.

Finally, Defendants contend that the exercise of federal jurisdiction here would not open the door to a flood of litigation from state to federal courts in similar cases. (Defs.' Resp. at 4.) This Court, however, cannot even undertake to evaluate the congressionally-mandated balance between federal and state judicial responsibilities unless there is a "necessary" question of federal law, which, as discussed, is not present here. <u>Grable</u>, 545 U.S. at 313 ("[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, [and then]. . . the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts[.]").

In sum, this Court is constrained to construe the removal provision narrowly and with the presumption against removal. Defendants have failed to meet their burden of establishing that the "well-pleaded complaint" here states any necessary, disputed question of federal law. Accordingly, this Court finds it is without subject matter jurisdiction to hear this case. Plaintiffs' motion to remand the case back to New York state court will be

granted.

### 3.  Request for Attorneys' Fees

Plaintiffs seek an award of attorneys' fees associated with Defendants' removal of this case to this Court.  (Pls.' Mem. at 8.)  Defendants do not respond to this contention.

By statute, a court is permitted to award attorneys' fees when it remands a case to state court.  28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.")  It may do so, however, only "where the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005).  In considering whether to award attorneys' fees, a court "should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."  Id. at 140.

This Court finds that an award of attorneys' fees is not warranted in this case. Defendants' argued basis for federal subject matter jurisdiction, while unpersuasive, is not wholly unreasonable.   Further, Plaintiffs do not assert, and there is no evidence suggesting, that Defendants sought to remove this case solely to delay the proceedings or impose litigation costs on Plaintiffs.  See, e.g., Elmira Teachers' Ass'n, et al. v. Elmira City Sch. Dist., 2006 WL 240552, *7 (W.D.N.Y. Jan. 27, 2006) ("[T]he absence of bad faith, as well as the existence of a colorable question as to whether removal is proper, weighs against the award of costs and fees.") (citing United Mut. Houses, L.P. v. Andujar, 230

F.Supp.2d 349, 354-55 (S.D.N.Y. 2002)).  Plaintiffs' request for attorneys' fees will be denied.

### B.  Defendants' Motions to Dismiss

Defendant Tonawanda Coke has moved to dismiss several counts of the Complaint and to strike several allegations in the Complaint.  (Docket No. 4.)   Additionally, Defendants Crane and Kamholz have moved to dismiss the entire Complaint under Rule 12(b)(6).  (Docket No. 3.)  Because this Court has determined that it lacks subject matter jurisdiction over this case, it is not permitted to reach the merits of Defendants' motions to dismiss.  Steel Co., 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting Ex Parte McCardle, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).  Accordingly, Defendants' motions will be denied without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand this case to the New York Supreme Court, County of Erie, is granted.  Plaintiffs' request for attorneys' fees is denied.  Defendants' motions to dismiss are denied without prejudice.

## V.  ORDERS

IT IS HEREBY ORDERED, that Plaintiffs' Motion to Remand (Docket No. 9) is GRANTED.

16

FURTHER, that Plaintiffs' request for attorneys' fees (Docket No. 9 (Cobb Aff. ¶ 13)) is DENIED.

FURTHER, that the Clerk of the Court is directed to transfer Case No. 1:10-CV-859 to the New York State Supreme Court, County of Erie.

FURTHER, that the Clerk of the Court is directed to close the above-referenced case upon transfer to the New York State Supreme Court, County of Erie.

FURTHER, that Defendants Crane and Kamholz's Motion to Dismiss (Docket No. 3), is DENIED without prejudice.

FURTHER, that Defendant Tonawanda Coke's Motion to Dismiss (Docket No. 4) is DENIED without prejudice.


        SO ORDERED.

Dated: August 25, 2011
        Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                                   Chief Judge
                                              United States District Court